We'll hear Silver. Good morning, may it please the Court. I'm Robert Mews from the American Freedom Law Center. It's my honor and privilege to represent Ms. Joelle Silver, the plaintiff appellant, in this important First Amendment case, and I'd like to reserve two minutes of my time for rebuttal. Ms. Silver does not forfeit her First Amendment rights because she is a public school teacher. Her displays at issue in this case convey personal, non-curricular messages that were posted pursuant to a school district policy permitting such speech. This is a factual conclusion that is not only established in the complaint, but was admitted to by the defendants in their answer. So, here, defendants' directive impinged upon Ms. Silver's First Amendment right to freedom of speech, and its restrictions were viewpoint-based. Those are key facts for this case, and it distinguishes it from other cases involving issues with teacher speech. Now, per the U.S. Supreme Court, speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint, which is precisely what happened here. What is the framework that you think we should apply? There is the Markey framework, there is the Peck framework, there is the Standards for Public Employee Regulation of Speech framework. Which framework? Right, Your Honor. I think, appropriately based on the facts, which is why I pointed out that this is unique, the court should view this from a forum perspective. And so, from a forum perspective, because you have Pickering, the Pickering balancing test, which Markey didn't rely on, you have Markey, you have cases where they've just determined that the speech is government speech, I mean, there's a whole host of different ways that the courts have reviewed these types of cases, but this case is factually unique because the speech occurs in the factual context of a forum that the school district created for this type of speech. And so the restriction is viewpoint-based. And so you must apply the standards for a viewpoint-based restriction. Why is it viewpoint-based rather than content? I mean, they're looking, they say, to avoid any potential establishment claim, and Markey says we should give them a fair amount of leeway to do that. I don't understand why it's viewpoint as opposed to content. Right, thank you, Your Honor. I think because the, for example, I mean, I think one of the outstanding examples for this point was the particular poster that said, be on God, stand true to what you believe, be courageous, be strong, and everything you do must be done in love. That message would be permissible otherwise, except for the fact that it's referencing 1 Corinthians chapters 13 through 14. So it's because it's the religious viewpoint of the inspirational messages that were conveyed, that message itself on its face is an inspirational message. Those types of messages are permitted in the school district. But because it came from 1 Corinthians, it was denied. That is classic viewpoint discrimination. And so because it's viewpoint discrimination, and I understand in Markey they said the government needs some leeway and some breathing space for determining whether or not their compliance with the Establishment Clause of Defense is legitimate. And I would agree that even in a forum question, a forum issue, which this is. And you look at Widmar versus Vincent, which is an interesting case, because there the forum was for students that belong to the school. So the forum doesn't necessarily have to be open to the general public. The government can limit a forum however they want to. In this case, they limited it to the teachers. And that forum, certainly if the government wanted to, and to go into your question, Your Honor. If the government tomorrow wanted to close the forum, if the school district wanted to close the forum, to all speech that is, to limit it to just speech that's curricular in nature that's related to the school, they could do that. But they've chosen not to do that. What's the best argument? I know this is not your argument. What's the best argument for looking at the sticky notes separately from the posters? Because each- Give me that argument. Yes, Your Honor. What would it be like? Well, because Your Honor, each one of these restrictions are restrictions on speech, and so you have to evaluate each one independently. I think that's, even in March, they looked at the- Let's say the posters weren't there, and all you had were the sticky notes. What would your argument be? It would be the same thing, Your Honor, because those, again, the sticky notes are a perfect example of why this is personal non-curricular speech. For goodness sakes, they were posted on the back side of the desk. They weren't displayed for the purposes of conveying any instruction to the students. And because they allowed personal inspirational messages to be displayed by the teachers, they can't say, well, these messages aren't permitted because they do so from a religious perspective. And there's no grounds- Don't we have to ask, though, whether it would be reasonable of a child or a parent entering the room to perceive that this was, these communications were the imprimatur of the school? I mean, there's not such a clear line in the context of a school setting, particularly a high school setting. This is a high school, which- This is a college of what is curricular, what is not curricular, what is on the walls, or even on a desk for public viewing. Why couldn't that reasonably be perceived as bearing the imprimatur of the school? Thank you, Your Honor, and the case of the Hazelwood, for example, deals with the school-sponsored speech issue, but even there, viewpoint discrimination isn't permissible. But getting more to your point, even under establishment clause analysis, there would have to be a determination that an objective, reasonable observer would conclude that the speech endorses religion in a way that violates the establishment clause. And I just don't think it, if you look even at the landscape of establishment clause cases, no reasonable observer, using the yellow sticky notes, would conclude that that's the government endorsing religion. And here, I would direct the court to Hill versus Scottsdale Unified School District. If you look at it in the context of the posters, it's all part of a larger message. Which posters? Well, you have the Ronald Reagan quote, you have the four calendar posters, you have, these things were part of her personal non-curricular messages. If you put it in the context of the forum, and again, I think what- Let them praise the name of the Lord, for his name alone is exalted, and his splendor is above the Earth and the Heavens, Psalms 148. That doesn't sound like an inspirational message, that's a religious message. Well, I mean, I think it is an inspirational- So, tell me now, could that be, that's not content, it's viewpoint, isn't it? Doesn't the school have an interest in not having proselytizing with regard to particular religious interests? Let me finish, particular religious interests, there may be children of the Buddhist faith or Hindus that are present that may not find that particularly attractive to them. I acknowledge that the government does have, in terms of their defense to a viewpoint-based discrimination, an Establishment Clause argument. But the question, it has to be justified, and it has to be justified with regard to each of the speech restrictions. So where else have they allowed religious speech in the school? Well, it's not a matter of allowing religious speech, Your Honor, it's allowing inspirational messages, and this is based on viewpoint. If they say they don't want religious speech, the fact that it may also be inspirational doesn't absolve it. I mean, there are many passages that are inspirational, but still have a religious bent to them. But I don't understand, how is it that this phrase is allowed because it also has an inspirational aspect to it, is that it? Well, Your Honor, I think you look at Lamb's Chapel, right? If the subject matter, and that one example that I gave you about the be on God, stand true, the first Corinthians, that's a perfect example. I don't blame you for that, but I gave you a little tougher case. Right, and I understand some cases are tougher than others, but certainly- Is the school district justified in taking this down because it's of a religious bent? I don't think so, because of the- Why? Why? Because, and let me just- She doesn't have a right, she does not have a constitutional right to express her religious beliefs where no religious beliefs are allowed to be expressed within a classroom, does she? When you allow messages of the, that- Does she have a right to say that children who are Jews are children of Satan, if that's her religious belief? You're- Does she have that right? I think- I don't know. In the school context, I would say no. Okay, so there are limits on her religious speech. There are limits, I grant that, Your Honor, and I've said that throughout the briefs. But I think, and if I may, and I know I've gone over, can I just finish this one point that I've been- Sure, and I may continue. Just this one last point, and it's with the Hill versus Gossdale case, and it was the Ninth Circuit citing the Seventh Circuit. They say it's far better to teach students about the First Amendment, about the differences between private and public action, about why we tolerate divergent views. The school's proper response is to educate the audience rather than squelch the speakers. Schools may explain that they do not endorse speech by permitting it. If pupils do not comprehend so simple a lesson, the one wonders whether the school can teach anything at all. And I think that's a response to that question. If you're taking, if a teacher is teaching algebra, and the teacher, in the course of teaching algebra, infuses the class with preaching, religious preaching, is that appropriate? It's not, Your Honor, and this is where the distinction is. And we're not challenging the restrictions on the curriculum, on her teaching, her classes, her science classes. There was an issue that came up with one of her lessons, which is what prompted the letter from the Freedom from Religion Foundation. And we understand the government has plenary authority over the curriculum. But when they create a forum that allows personal, non-curricular messages to be displayed, and they say you can't display your messages because it expresses a religious viewpoint, that's viewpoint discrimination, that's a different issue, that's this case, and we should prevail. But if you have wall posters, isn't that the equivalent of preaching? No, Your Honor, it's not. If they're displayed pursuant to this particular policy, that's what makes this case different than other cases. The Lee case, for example, the Johnson case, and the others that have been cited throughout these briefs. So it's the school's invitation to display inspirational material. Is that what opens the door to any kind of religious or It certainly opens it to the speech that's at issue here, Your Honor. And that's- If we were to apply the Pickering standard, could you help me understand, just walk me through this, what is the matter of public concern? Well, certainly, because again, you can't take it outside of the factual context of the form that these are personal. These are personal messages that she conveys pursuant to the policy. So that would be her personal speech. And then you've got to balance it against the interest of the government in promoting its interest as a government entity. And I still think under that balance, and granted, the calendars are a closer call. But that be on guard sign is not. These sticky notes on the back of the desk, those are not. Those are personal, private speech that they've restricted in a way that's absolutely unreasonable and violates the First Amendment. What is the civilian analog to Silver's speech? The civilian analog would be perhaps the Widmar case, where the government opens a forum to a certain class of individuals who happen to be registered students. So it wasn't open to the public. And in Widmar, although they called it a designated public forum, I think under today's standard, they might consider it a limited public forum. And the court said that they couldn't restrict that forum for religious worship because it's viewpoint discrimination. And the government lost in that case. That's a closer analogy to what we have here. Are there differences between students and teachers in terms of restrictions that can be made? Teachers are teaching a curriculum. Certainly when they're teaching curriculum, and I think that's where the distinction is. And I acknowledge that they have plenty of authority over the curriculum. But I know Tinker versus Des Moines, Frank versus Morris, all these other cases have said time and time again that not only that teachers and students, or students and teachers, whichever direction they go, do not share the constitutional rights of the schoolhouse case. So you'd have to conclude that Mrs. Silver surrenders her constitutional rights once she becomes a public school teacher. And that's not what the law allows or says. In fact, Marshy says just the opposite. Thank you. Thank you. You'll have a couple of minutes in rebuttal. Thank you. Morning, your honors. Jeremy Colby of Web Susani on behalf of the Chituaga Central School District and Superintendent Kane respectfully requests two minutes in rebuttal. You don't get two minutes. Okay. He gets two minutes in rebuttal. Sounds good. Fair enough, your honor. And just FYI, Superintendent Kane's actually since retired. I also believe the plaintiff has left the school district as well, which would only impact the injunctive relief. Just to address your honor's question regarding which framework, I don't think it's mutually exclusive. I think that Marchy and Garcetti in the various cases that we've cited are all obstacles or gates the plaintiff has to successfully navigate in order to have this decision reversed. Marchy governs here, this court. Do we need to, are we entitled to look at each set of materials that are subject to dispute here, that is the posters, the prayer box, and the sticky notes? Separately, or do we need to look at them as a group to kind of determine what the reasonable perception of a student in the class would be? I believe that they should be reviewed collectively or in the aggregate, just for that reason, your honor. Because a parent on student parent night or student or any other visitor to the classroom is not necessarily going to see something isolated in context, just the stickies or just this. The sticky notes were on her desk at a low down position as reflected in the photographs and not readily available or visible and readable, legible to the people sitting in the classroom. Well, perhaps seated in the seats, but any time a student were to come around to see the teacher to answer a question or maybe come up to the front of the room to make a presentation, or even a janitor at night who's going to come in to the building is going, cleaning around the desk is going to see these, and I think that the reasonable observer looking around could say, that wow, the district has really put its imprimatur on these religious references. The original complaint, right, didn't make reference to the sticky notes, did it? It referred to the counseling letter, and the counseling letter, so the- So when the concern about, the concern that animated all this was really, it was not the sticky notes which weren't mentioned, right? It was the posters, and that was the concern. I guess I'm not following you, you're talking about the complaint filed by plaintiff, the complaint, the student lives with, I guess I'm not following which complaint you're referring to. I think the, if you look at what was, those who are concerned about about the religious nature. The freedom from religion. The freedom from religion. Okay, so right, but- Am I correct? The sticky notes were not part of what they're concerned with. I believe that's correct, but I wouldn't say that it's fair to say that's not what they were concerned with. I think that that letter was simply generated based on a student complaint, either in mail or email or over the phone or whatever. It wasn't an investigation based on having gone through the classroom and looked around, which is exactly what the school district did. So, I don't think it's fair to say, well, even this- Let me ask you this. Let's say that the posters were out of the picture and all you had left were the sticky notes, would you have the same concerns? Although mitigated, yes, I would have the same concerns. I mean, especially one of the sticky notes that Judge Fascio had specifically indicated suggested that an observer of that note would feel that if they don't share that belief, that they would be a political outsider, that they were damned if they didn't follow that belief system. So yeah, I mean, although that would be a better case for plaintiff, that's not this case. And even if it were that case, it would, under Marchie and Knight, the district- Sorry, go ahead. No, no, I didn't mean to interrupt. No, no, you could- Under Marchie and Knight, the district is, because again, you have to separate the school district as the government, as a sovereign, versus the school district as an employer. And here, the employer can govern what speech is undertaken by its employees on its premises. We don't want you putting religious messages on your desk or anywhere in the classroom. That's the- How do the sticky notes differ from wearing a cross or some sort of religious jewelry? Well, I think that the sticky notes are attached to a school-owned desk. And this is something that's in the building all the time. Anybody, when the teacher's not there, anybody going through that building can see that and say, okay, well, geez, the district permits this. So they must be giving it their imprimatur, as opposed to religious jewelry, which is, anybody seeing that, and I think it's an interesting comparison between the religious jewelry on the one hand, and the teacher in Downing that wore the Jesus 2000 t-shirt. There, the district said, no, it wasn't reviewed on appeal, but there the district said that you cannot wear this Jesus 2000 t-shirt that is basically like the posters. That's proselytizing in your classroom. Whereas, jewelry is not as, I guess, in your face, perhaps. It's something that people are accustomed to seeing as reflective of that person's individual preference or style, as opposed to the school district. All right. With regard to Garcetti, if our court has not applied Garcetti in the classroom teacher context. Is that right? Other circumstances. Well, Weintraub. We haven't quite. Weintraub gets you close. I'm talking about speech and of this type within a classroom. Weintraub is like union grievance. Correct. Outside of the classroom, a different setting. Have we ever applied Garcetti? Doesn't that, applying Garcetti might imply that we were restricting some sense of academic freedom, which is otherwise expected in the. Well, this court, I'm sorry. In the school environment. Go ahead. No, this court, you're quite right that I'm not aware of any decision by this court that has applied Garcetti in the classroom, but I'm not aware of any other decision by any other circuit court of appeals that has done so and would support plaintiffs. We've cited cases from the Sixth Circuit, the Judge Sutton's decision and Evans-Marshall, which does apply that that case did not involve religious speech. It involved an English teacher teaching various, I guess, taboo texts and various other things. But there, Garcetti was applied and the Sixth Circuit said, this is the school district speech and they can regulate it. There's no First Amendment right. In fact, plaintiff hasn't cited any case that says that a teacher in a secondary or primary setting has a First Amendment right to speak or to place posters in the classroom. So if the school district directs a teacher not to teach evolution and to give an alternative explanation for man's presence on Earth, they would have the right to fire a teacher who didn't follow that directive? Yes. Yes, because the school district sets the curriculum, and if the school district does not want creationism taught, and a teacher defies that and teaches it, then- I'm saying the reverse. If the school district decides it wants only creationism taught- Okay, I'm sorry. Then the teacher has no right to teach anything other than that, and that the school district could fire the teacher for not teaching creationism. Is that right? I think that's correct. Yes. Doesn't Markey seem to accept that the First Amendment covers a speech? Well, I agree that Plaintiff has taken a line out of Markey that says that the teacher unquestionably has First Amendment right in this speech. But Markey was decided in 1999, several years before Garcetti. And with all due respect, I would suggest that if Garcetti is going to be applied, as I think that the body of case law suggests that it will, in the classroom setting, then there is no First Amendment right to that speech. So- As to the question of whether there was a civilian analog, your answer is- That there isn't. That there, no other citizen could have walked in that classroom and posted things, you know, and expected to post things on the desk, or the walls, or anywhere else in that classroom. So, and I just want to briefly address before my time's up, Plaintiff had indicated that the, it referenced the district's answer. Again, the answer was after the motion dismissed, I don't think it's properly considered on the record. That said, however, paragraph 16, which Plaintiff is referencing, does not admit that Plaintiff's speech was done pursuant to her policy. It simply admits the very benign fact that the school district, like every other school district, I think, in the country, has a policy of allowing teachers to decorate their classrooms in a way that suggests their personal style. Or maybe they have a poster of a cat, a little kitten on a branch, and it says hang in there. Things like that. Teachers do that all the time. And, but it's only when teachers cross the line, such as in this case, such as in the Johnson case in the Ninth Circuit, that districts have to step in and say, well, no, because of our responsibility to govern against an establishment clause violation, we have to step in and micromanage that more. Pack didn't let open the question of whether an avoidance of an establishment clause of violation would justify viewpoint discrimination. I'm sorry, you want to continue, your honor? Yeah. Yeah, okay. I'm sorry. As long as we're both speaking. Yes, that's fine. Okay, I'm sorry, what was the question? I apologize. I have not stopped by the red light. Okay. Hope that you'll answer the question. Yeah, no, could you, I'm sorry, could you, I was just, I got. You didn't hear me. Yes, please, I'm sorry. I'm sorry. I apologize. Can you hear me now? Yes. Okay, sometimes I mumble. No, that's fine, your honor. Pack, right, left open the question of whether avoidance of an establishment clause violation would justify viewpoint discrimination, didn't it? I don't know that it left it open. I believe Pack was, as I recall, the case involving the kindergarten student that had a poster, that had some religious content in the recycling poster. And in that case, I believe this court found that the religious speech, I believe, unless I'm thinking of a different case, was not viewpoint, but was content that could be regulated. But again, I think Pack is instructive in that. Again, the court there said that this kindergarten student's poster could be deemed an endorsement by the district or give reasonable observer the belief that the district puts its imprimatur on this religious content, which is, I think, a far cry from a teacher doing so in her public school classroom. I mean, I think any reasonable observer, again, I think that's a bit aggressive. Because I think any reasonable observer seeing a kindergarten student's poster would think that that's the student's work. Not necessarily that the district puts its imprimatur as opposed to, just permits student posters, whether it be religious or not religious or whatever. So again, I think school districts have the ability to restrict a kindergarten student's poster from being hung in a cafeteria based on establishment clause concerns. And districts certainly have the ability to regulate where one of their own employees has decorated a classroom with much more overt religious content. Thank you, Henry. Thank you. I'm sorry for not speaking more clearly. No, no, no, you're fine, you're fine, I was just kidding, I can't hear very well. With regard to the question about aggregating the displays, if you look at the counseling letter itself, the counseling letter itself treats each one separately, and the directive is if you don't follow each one of these instructions, then you are subject to termination. So even the school district themselves in the counseling letter treats each one of the displays separately, and I think it's absolutely appropriate that this court should treat each one of them separately. Your Honor, you mentioned about the complaint, I was a little confused myself as well if you're referring to our complaint. We obviously put the sticky notes as part of our lawsuit. I wasn't talking about your complaint. Right, but the Freedom from Religion Foundation didn't even mention the sticky notes and several of the other displays. It's just not reasonable to conclude that these are an establishment clause violation. And with regard to the question of whether or not an avoidance of establishment clause violation may overcome viewpoint discrimination, that is still an open question. I think it was an open question by the Supreme Court in Widmar versus Vincent, whether or not that reaches the level of a compelling interest. But the fact still remains that that defense must be a legitimate one. It must be grounded in the facts and the law. You just can't just say establishment clause and all of a sudden you have a compelling interest and then the establishment clause becomes a blunt instrument. I think the Tenth Circuit had the right approach when they said, look, this is a constitutional justification. And because of that, we the court, you the judges, are very well equipped to judge their determination whether or not it's a legitimate establishment clause violation. And that you don't give the school district that much deference as you would in normal discipline matters that involve the school district. Can you have us parse the religious orientation versus the inspirational, possible inspirational content to decide on an individual basis, each one of the posters, as to whether they were expression for a religious viewpoint as opposed to an inspirational message? Your Honor, I think you're parsing things, because I think if you look at the message. That's what I said I was going to do, you heard me correctly. Well, there's two questions. The question is whether or not, is it just a content based or a viewpoint based? And I think under the law, the distinctions they're making are viewpoint based. So then the question becomes, do they have a compelling interest in prohibiting that particular display? And you would go through what the standard is. A reasonable, objective observer, would they conclude that this is an endorsement? Look at each individual. Yes, if that's, I'm sorry you're on there, maybe I didn't follow your question. Would have gotten us to the same spot. We're going to go in 30 seconds faster. Thank you, Your Honor. Isn't it the case, and correct me if I'm wrong, and your adversary can correct me if I'm wrong, that the school authorities had no objection to the sticky notes, or the contents of the sticky notes, if they were put in a drawer somewhere in the teacher's desk, where the teacher could open up the desk and look at the notes? Right, Your Honor, and I think we addressed that in the brief. That would not, from our perspective, be a reasonable accommodation. In fact, that's an insult. The fact that they would treat these sticky notes as if they were some form of obscenity, that they have to be hidden in a folder, in a drawer, and not allow anyone to see or look at them. I mean, that's an absurdity. As I said, that's not an accommodation, that's an insult. They were for others to see as opposed to just the teacher, is that what you're saying? No, Your Honor, I think the way they're treating her disparately. If those sticky notes had been hang in there with their little kitty or whatever the example he used, that would be perfectly fine. They're not going to tell that person to hide them in a drawer because you happen to promote cats. They are all religious in nature. I don't think all of them are quotes in the Bible. I'd have to look at the, there was one of them that was not from any scripture quotes, but certainly they had a religious component to them. From Hebrews 10, 23. Exactly. The next one's from Job 15, 24 through 35, the next is Psalm 27, 13 through 14. And the last one's kind of a nice quote, I'll give you that. Lord, when we are wrong, make us willing to change. And when we are right, make us easy to live with. I perhaps ought to have that on my desk. There's no attribution there, that's for certain. That's right, Your Honor. So all of them save that. This one uses the word Lord, but whatever that means. Okay, fair enough. Thank you. Thank you. Thank you. Thank you both for your good arguments. Very much appreciate them. The court will reserve decision. Hear the name.